# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

CLARENCE O. REYNOLDS,       :
     Plaintiff,           :
                         :
v.                        :     Case No: 3:04cv218 (PCD)
                         :
RICHARD S. BLUMENTHAL,     :
ATTORNEY GENERAL OF THE STATE :
OF CONNECTICUT; MARK F. KOHLER, :
ASSISTANT ATTORNEY GENERAL OF  :
THE STATE OF CONNECTICUT;     :
CONNECTICUT DEPARTMENT OF     :
PUBLIC UTILITY CONTROL;       :
NORTHEAST NUCLEAR ENERGY     :
COMPANY; NORTHEAST UTILITIES   :
SERVICE COMPANY; CONNECTICUT  :
LIGHT & POWER COMPANY; DAY    :
BERRY & HOWARD, LLP; ALLAN B.  :
TAYLOR,                     :
        Defendants.         :

## <u>RULING ON MOTION TO DISMISS</u>

Plaintiff, Clarence Reynolds, brings this action pursuant to 42 U.S.C. §§ 1983 and 1985

alleging, *inter alia*, that Defendants violated his constitutional, statutory, and common law rights

when he was terminated in retaliation for filing whistleblower complaints.[1]  Defendants Attorney

General Richard Blumenthal ("Blumenthal"), Assistant Attorney General Mark Kohler

---

[1]     Although Plaintiff was originally represented by an attorney, he is now proceeding *pro se*.  On March 4, 2004, defendant Allan Taylor moved to strike the Plaintiff's Complaint pursuant to Local Rule 16(g)(2) on the ground that Plaintiff's counsel, Nancy Burton, had outstanding unpaid sanctions against her.  On May 3, 2004, this Court granted Taylor's motion to strike and ordered Nancy Burton not to function, in any capacity, as an attorney in connection with the case. (See Ruling on Mot. Strike 1, May 3, 2004, Doc. No. 26 ("In the absence of payment of sanctions ordered by Judge Nevas, . . . Attorney Burton is foreclosed from filing any pleadings in this Court," and is ordered "to not function, in any capacity, as an attorney with respect to this case.").)  Plaintiff appealed that ruling to the Second Circuit, however, his appeal was dismissed on the ground that "a final order has not been issued by the district court as contemplated by 28 U.S.C. § 1291." (Mandate, Jan. 13, 2005, Doc. No. 34.)

("Kohler"), and the Connecticut Department of Public Utility Control ("DPUC") (together, the "State Defendants") move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint as to them on the grounds that Plaintiff's claims are (1) barred by the Eleventh Amendment; (2) barred by res judicata; (3) barred by the applicable statute of limitations; (4) barred by sovereign immunity; (5) barred by the Rooker-Feldman doctrine; and (6) fail to state a claim on which relief can be granted. For the reasons that follow, the State Defendants' Motion to Dismiss [Doc. No. 11] is **granted**.

## I.    BACKGROUND[2]

Plaintiff was employed as a skilled mechanic at the Millstone Nuclear Power Station ("Millstone") by defendant Northeast Nuclear Energy Company ("NNECO") from 1980 until June 27, 1994, when his employment was terminated. (Compl. ¶¶ 4, 12.) On September 24, 1993, nine months before NNECO terminated his employment, Plaintiff filed a formal complaint, pursuant to Conn. Gen. Stat. § 16-8a (the "Nuclear Whistleblower Act"), with the DPUC. (Id. ¶ 13.) In his complaint, Plaintiff alleged that he was harassed and intimidated for filing health and safety complaints with NNECO and various regulatory agencies. (Id.) Following his termination, Plaintiff sought an order from the DPUC, pursuant to Conn. Gen. Stat. § 16-8a(c)(4), reinstating his employment. (Id. ¶ 14.)

After his employment was terminated, Plaintiff also filed a complaint against NNECO with the United States Department of Labor ("DOL"), alleging retaliatory discharge and

---

[2] A court considering a motion to dismiss for failure to state a claim must accept the facts alleged in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Accordingly, the statement of facts that follows is derived in large part from Plaintiff's Complaint. Because this ruling also involves a motion to dismiss pursuant to Rule 12(b)(1), however, the statement of facts also refers to evidence outside the pleadings. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

discipline under the Energy Reorganization Act, 42 U.S.C. § 5851. See Reynolds v. Northeast Nuclear Energy Co., No. CV 940541440, 20 Conn. L. Rptr. 683, 1997 Conn. Super. LEXIS 2839, at *2 (Super. Ct. Oct. 14, 1997).[3]  After a ten-day hearing, an Administrative Law Judge ("ALJ") issued a recommended decision and order in which the ALJ found that Plaintiff "had a poor attendance record," "an uncooperative attitude," was "missing from work on a number of occasions," "was caught sleeping on the job on several occasions," and that his "performance in 1991 was deplorable." Id. at *4.  The ALJ also found that Plaintiff committed perjury during the proceedings before the DOL, was untruthful, and "provided a series of false and misleading statements" to a DOL Investigator. Id.  Finally, the ALJ concluded that Plaintiff "failed to provide any evidence, circumstantial or direct, linking his raising of safety concerns with his discipline and termination." Id. at *5.  That decision was adopted by the Administrative Review Board as "factually and legally sound," and Plaintiff's complaint was dismissed with prejudice on March 31, 1997. Id. at *5 and *9.

On September 10, 1997, after an investigation, the DPUC issued a preliminary ruling ordering Plaintiff reinstated to his employment. (Compl. ¶ 15.)  Specifically, the DPUC found that Plaintiff (1) had complained of misfeasance, malfeasance, or nonfeasance; (2) was fired; and (3) had not knowingly made a false report.  Accordingly, the DPUC concluded that there was a presumption that NNECO had retaliated against Plaintiff and issued the preliminary ruling

---

[3]  Plaintiff also filed a civil suit against NNECO in Connecticut Superior Court alleging retaliatory discharge and discipline in violation of Conn. Gen. Stat. § 31-51q. Reynolds v. Northeast Nuclear Energy Co., 1997 Conn. Super. LEXIS 2839.  On October 14, 1997, the Superior Court granted summary judgment for NNECO, finding that Plaintiff's claims had been fully litigated by the same parties in the DOL proceeding and thus were barred by the doctrines of res judicata and collateral estoppel. Id.

ordering NNECO to immediately reinstate Plaintiff.[4]  The DPUC, however, did not effectuate the

reinstatement order, which explicitly provided that the order would be stayed pending NNECO's

appeal of previous department decisions issued pursuant to the Whistleblower Act. (Id. ¶ 16;

DPUC Decision 7, Sept. 7, 1997, Ex. 4 to Defs.' Mot. Dismiss.)  The appeal, which was filed in

United States District Court, District of Connecticut, by NNECO, Northeast Utilities Service

Company ("NUSCO"), Connecticut Light & Power ("CL&P") and related entities against the

DPUC, challenged 1997 Conn. Pub. Acts No. 97-60 as unconstitutional and sought a preliminary

injunction prohibiting the DPUC from applying the amended Act. (Compl. ¶¶ 16-17); see also

Connecticut Light & Power Company et al. v. State of Connecticut Department of Public Utility

Control, 3:97cv1258 (RNC) ("CL&P v. DPUC").  Plaintiff was not a party to this action.

(Compl. ¶ 17.)

     According to Plaintiff's Complaint, on October 9, 1997, in proceedings before the United

---

[4]     At the time when Plaintiff filed his complaint with the DPUC, the Connecticut Nuclear
Whistleblower Act, Conn. Gen. Stat. § 16-8a, had been recently amended by 1997 Conn. Pub. Act
No. 97-60, which prohibited public service companies and other regulated entities from taking or
threatening to take any retaliatory action against an employee for disclosing any mater involving
"substantial misfeasance, malfeasance or nonfeasance" in the management of the company. 1997
Conn. Pub. Acts No. 97-60 § 1(a), Ex. 2 to Defs.' Mot. Dismiss.  If an employee complained of
such retaliatory action, the amendment required the DPUC to make a preliminary finding regarding
the alleged retaliation based on sworn affidavits and verified documents, without holding a public
hearing. 1997 Conn. Pub. Acts No. 97-60 § 1(c)(1).  The employer was notified of the complaint
and provided an opportunity to respond, however, in making the preliminary finding, the DPUC
was required to adopt a presumption that the employee had been retaliated against in violation of
the Act if it found that: "(A) the employee had reported substantial misfeasance, malfeasance or
nonfeasance in the management of the public service company, holding company or licensee; (B)
the employee was subsequently discharged, suspended, demoted or otherwise penalized by having
his status of employment changed by his employer; and (C) the employee's report was not
knowingly false." 1997 Conn. Pub. Acts No. 97-60 § 1(c)(2)-(3).  If the DPUC made this finding,
it was required to "issue an order requiring the employer to immediately return the employee to the
employee's previous position of employment or an equivalent position." 1997 Conn. Pub. Acts No.
97-60 § 1(c)(4).  It was only after making this finding that the DPUC was required to "conduct a
full investigatory proceeding . . . at which time the employer shall have the opportunity to rebut the
presumption." 1997 Conn. Pub. Acts No. 97-60 § 1(d).  This is no longer the law, as discussed
below. See Conn. Gen. Stat. § 16-8a, as amended by 1999 Conn. Pub. Acts No. 99-46.

States District Court, defendants Taylor and Blumenthal, acting by and through defendant

Kohler, agreed that the DPUC would not enforce its order to reinstate Plaintiff to his employment

at Millstone. (Compl. ¶ 21.)  Plaintiff was not reinstated to his employment, and was not notified

by any of the defendants as to their agreement not to effectuate his reinstatement. (Id. ¶ 22.)  The

State Defendants assert that no secret agreement existed. (See Defs.' Reply 2-4.)  To prove this,

they submit the transcript of the October 9, 1997 oral argument before Judge Chatigny.[5]  The

transcript reveals that the only exchange mentioning Reynolds occurred when counsel for the

plaintiffs in that suit, Allan Taylor, in determining whether to make a federal preemption

argument, briefly clarified that it was the DPUC's position that the amended Act would not

require the plaintiffs to reinstate Reynolds to the same or equivalent position. (CL&P v. DPUC

Transcript at 4:13-22, Oct. 9, 1997, Ex. A to Defs.' Reply.)  Attorney Kohler, representing the

---

[5]     In ruling on a motion to dismiss, courts may consider documents that have been incorporated by
reference in the plaintiff's complaint—i.e., a document may be considered if the complaint "relies
heavily upon its terms and effect," such that the document may be considered "integral" to the
complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l
Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  The
Chambers Court cautioned, however, that "a plaintiff's reliance on the terms and effect of a
document in drafting the complaint is a necessary prerequisite to the court's consideration of the
document on a dismissal motion; mere notice or possession is not enough." Id. at 153.  In the
instant case, the transcript of the October 9, 1997 oral argument is integral to Plaintiff's claims and
thus is incorporated by reference in his Complaint. (See Compl. ¶¶ 17-18, 21.)  The Second Circuit
has also stated that a court ruling on a motion to dismiss may consider "matters of which judicial
notice may be taken," Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.
1993), and it is has been held that courts may take judicial notice of transcripts from judicial
proceedings in related cases. See Browdy v. Karpe, No. 3:00cv1866 (CFD), 2004 U.S. Dist.
LEXIS 19299, at *5 n.3 (D. Conn. Sept. 20, 2004) (citing Kramer v. Time Warner Inc., 937 F.2d
767, 774 (2d Cir. 1991) (noting that "courts routinely take judicial notice of documents filed in
other courts, again not for the truth of the matters asserted in the other litigation, but rather to
establish the fact of such litigation and related filings")); see also Fed. R. Evid. 201(b) (authorizing
a court to take judicial notice of an adjudicative fact if that fact is "not subject to reasonable
dispute" or if it is "capable of accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned").  It should be emphasized, however, that a court may
take judicial notice of a document filed in another court "not for the truth of the matters asserted in
the other litigation, but rather to establish the fact of such litigation and related filings." Kramer,
937 F.2d at 774.

DPUC, confirmed this was the DPUC's position. (Id. at 4:24-25.)[6]

While this suit was pending, the General Assembly adopted 1999 Conn. Pub. Acts No. 99-46, which amended Conn. Gen. Stat. § 16-8a, effective May 27, 1999.  The amendment changed the process that had been adopted in Public Act 97-60, discussed in supra note 3, and that was being challenged by NNECO, NUSCO and CL&P.  Specifically, the amendment gave the employer an opportunity to respond to an employee's complaint and to have its response considered by the DPUC *prior* to the DPUC's issuance of a preliminary ruling:

> The employer may submit a written response and both the employer and the employee may present rebuttal statements in the form of affidavits from witnesses and supporting documents and may meet with the department informally to respond verbally about the nature of the employee's charges. The department shall consider in making its preliminary finding as provided in subdivision (3) of this subsection any such written and verbal responses, including affidavits and supporting documents, received by the department not more than twenty business days after the employer receives such notice.

1999 Conn. Pub. Acts No. 99-46 § 1(c)(2).  The amendment eliminated the presumption of retaliation if the employer could show, "by clear and convincing evidence that the adverse employment action was taken for a reason unconnected with the employee's report of substantial misfeasance, malfeasance or nonfeasance." 1999 Conn. Pub. Acts No. 99-46 § 1(c)(3).

---

[6]     Specifically, the transcript indicates that Attorney Taylor stated that "[i]f it is not the position of the State that as a matter of law we are required to reinstate [Reynolds] to a position at the nuclear plant, then we're not asking for a judgment that there is no other position, no non-nuclear position. So [the plaintiffs'] view is that the statute is preempted as applied to the extent that it requires us to reinstate him to a nuclear plant, and we're not seeking any further judgment other than that." (CL&P v. DPUC Transcript at 4:13-22.)  Attorney Kohler indicated that he was satisfied with that statement.  The only other times that Reynolds was mentioned during oral argument were: (1) on pages 6 and 7 of the transcript, where the attorneys used the "Reynolds facts" as an illustration of "the fundamental substantive due process problem with [the amended Whistleblower Act]," (id. at 6:7-8), and (2) at the end of the oral argument, when Attorney Taylor noted that "it is the State's position that we are not compelled to return Mr. Reynolds to a nuclear plant position makes [the preemption] issue at this point not requiring any further decision," and Attorney Kohler agreed that the "Reynolds issue" was moot, (id. at 32:14-24).

CL&P v. DPUC was resolved by a confidential out-of-court settlement and the case was closed on November 22, 1999. (Compl. ¶ 18.)  Following the close of that action, the DPUC did not effectuate its reinstatement order, notwithstanding Plaintiff's efforts in pressing the DPUC to effectuate his reinstatement. (Id. ¶¶ 18-19.)  However, by letter dated October 26, 1999, the DPUC notified NNECO and Plaintiff that it would continue processing Plaintiff's complaint pursuant to Conn. Gen. Stat. § 16-8a, as amended by Public Act No. 99-46.  A final decision was issued on May 2, 2001. (See DPUC Decision 3, May 2, 2001, Ex. 5 to Defs.' Mot. Dismiss.[7])  Pursuant to Public Act No. 99-46, the DPUC accepted a response from NNECO and concluded, "by clear and convincing evidence, that the adverse employment action taken against [Plaintiff] was for reasons other than as retaliation for reasons connected to his report of substantial misfeasance, malfeasance or nonfeasance." (Id. at 7-8.)  In particular, the DPUC found that Plaintiff's "actual employment history [was] marked by a long period of deterioration beginning shortly after his employment in 1980," Plaintiff "routinely engaged in confrontational behavior with his management and his peers," and the "vast majority" of his safety concerns were not valid. (Id. at 6.)  Although the DPUC noted that Plaintiff's "termination was coincidental to the imposition of a fine on [him]," it was determined that "the record in this case supports the finding that [NNECO] was justified in its termination of Mr. Reynolds as an employee." (Id. at

---

[7]    As stated in supra note 6, a court ruling on a motion to dismiss may consider matters of which judicial notice may be taken. Brass, 987 F.2d at 150.  Among the matters of which courts may take judicial notice are decisions of an administrative agency, such as the DPUC decision discussed herein. See Furnari v. Warden, 218 F.3d 250, 255 (3d Cir. 2000) ("it is proper for this Court to take judicial notice of decisions of an administrative agency"); Opoka v. INS, 94 F.3d 392, 394 (7th Cir. 1996) ("it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice") (citing, among others, Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992)).

8.)  Accordingly, the DPUC dismissed Plaintiff's complaint. (Compl. ¶ 20.)

Plaintiff contends that the DPUC's May 2, 2001 decision was issued without further investigation, and only after he testified, on March 12, 2001, during court proceedings on the proposed sale of the Millstone Nuclear Power Station to Dominion Nuclear Connecticut, Inc., about criminal conduct at Millstone. (Id.)

On June 15, 2001, Plaintiff brought suit in Connecticut Superior Court, challenging the DPUC's decision. See Reynolds v. Dep't of Pub. Util. Control, 48 Conn. Supp. 188, 835 A.2d 134 (Super. Ct. 2001).  The Connecticut Superior Court dismissed the suit, concluding that the DPUC's decision was not a contested case subject to appeal under the Uniform Administrative Procedure Act, and that the Nuclear Whistleblower Statute, Conn. Gen. Stat. § 16-8a, did not create a right of action against the DPUC. Id.  Plaintiff appealed, however, the Connecticut Supreme Court affirmed the Superior Court's decision on November 18, 2003. See Reynolds v. Dep't of Pub. Util. Control, 266 Conn. 606, 834 A.2d 58 (2003).

Subsequently, on February 9, 2004, Plaintiff filed the present suit in United States District Court.  Seeking reinstatement to his position at Millstone, as well as compensatory and punitive damages, attorneys' fees and costs, Plaintiff's Complaint sets out five counts against Defendants: (1) deprivation of his right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution and Article First, Sections 8 and 10 of the Connecticut Constitution, in violation of 42 U.S.C. § 1983; (2) conspiracy to deprive Plaintiff of his federal and state constitutional rights in violation of 42 U.S.C. § 1985; (3) violation of the Nuclear Whistleblower Act, Conn. Gen. Stat. § 16-8a; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. (Compl. ¶¶ 25-33.)

II.     **STANDARD OF REVIEW**

A.      **Rule 12(b)(1)**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  See Fed. R. Civ. P. 12(b)(1).  Plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing by a preponderance of the evidence that it exists, Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996), and the court should not draw argumentative inferences in his favor.  Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992).  Unlike with a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing").   A court must "look to the substance of the allegations to determine jurisdiction." Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993).

Defendant is moving to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  When a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. V. Alabama Ins. Guaranty Ass'n., 896 F.2d 674, 678 (2d Cir. 1990).

**B.      Rule 12(b)(6)**

The function of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim

is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which

might be offered in support thereof."  Ryder Energy Distribution Corp. v. Merrill Lynch

Commodities, Inc., 748 F.2d 774, 776 (2d Cir. 1984) (citation omitted).  Therefore, when

considering such a motion, the court must accept the facts alleged in the complaint as true.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Dismissal of a complaint under Rule 12(b)(6) is

inappropriate unless "it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." I. Meyer Pincus & Associates v. Oppenheimer & Co.,

936 F.2d 759, 762 (2d Cir.1991); see also Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)

(Courts should not grant a Rule 12(b)(6) motion to dismiss merely because recovery seems

unlikely or remote, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims.").

**III.    DISCUSSION**[8]

**A.      The Eleventh Amendment**

**1.      Federal Claims Against State Agencies**

The Eleventh Amendment provides that: "The judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

---

[8]      Plaintiff is granted extra deference here in light of his *pro se* status. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (holding the allegations of a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"); see also Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (noting that "district courts should be especially hesitant to dismiss for procedural deficiencies where . . . the failure is by a pro se litigant").

U.S. Const. amend. XI.  The Supreme Court has consistently held that this amendment prohibits a private party from suing a state in federal court unless Congress unequivocally expresses its intent to abrogate that immunity or a state waives its immunity. See Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004).  This jurisdictional bar applies "whether the relief sought is legal or equitable," Papasan v. Allain, 478 U.S. 265, 276, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986), and encompasses actions against the state itself and certain actions against a state's agencies, agents or instrumentalities. Regents of the Univ. of California v. Doe, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997); see also Ford Motor Co. v. Department of Treasury of Ind., 323 U.S. 459, 464, 89 L. Ed. 389, 65 S. Ct. 347 (1945) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").  "It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (citing Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981) (per curiam); Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)).

The fact that Plaintiff has sued the State Defendants pursuant to 42 U.S.C. §§ 1983 and 1985 does not change the analysis. The Supreme Court has established that Congress, in enacting § 1983, did not abrogate the states' sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman, 415 U.S. 651.  Moreover, state agencies are not

considered "persons" subject to liability under § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

The DPUC is "a state agency authorized pursuant to title 16 of the General Statutes to regulate and supervise the operation of public service companies." <u>New England Cable Television Ass'n v. Dep't of Pub. Util. Control</u>, 247 Conn. 95, 98, 717 A.2d 1276 (1998); <u>see also</u> Conn. Gen. Stat. § 16-1 <u>et</u> <u>seq</u>. As such, the Eleventh Amendment bars Plaintiff's federal law claims for both monetary and injunctive relief against the DPUC, and deprives this Court of subject matter jurisdiction over those claims.

Plaintiff asserts, in his Opposition to the Motion to Dismiss, that his claims against the DPUC will not be barred if he is allowed to amend his Complaint in order to sue individual members of the DPUC, and requests permission to do so. (Pl.'s Opp. Mot. Dismiss ¶ 1.)

> 2.   <u>Federal Claims for Money Damages Against State Officials in their Official Capacities</u>

It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which "is no different from a suit against the State itself." <u>Will</u>, 491 U.S. at 71. Because a suit against a state official in his or her official capacity is considered the equivalent of a suit against the State itself, suits for money damages are barred by the Eleventh Amendment. <u>Hafer v. Melo</u>, 502 U.S. 21, 27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); <u>Edelman</u>, 415 U.S. at 677; <u>Berman Enterprises, Inc.</u> Thus, although private parties may not seek a "retroactive award which requires the payment of funds from the state

treasury," a federal court may, under <u>Ex parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714

(1908), "enjoin state officials to conform their future conduct to the requirements of federal law,

even though such an injunction may have an ancillary effect on the state treasury." <u>Quern</u>, 440

U.S. at 337 (citing <u>Edelman</u>, 415 U.S. at 667-68); <u>Pennhurst</u>, 465 U.S. at 121.  The exception

created for claims against state officers for prospective injunctive relief based on allegations of a

federal constitutional violation does not extend to claims for money damages or any other form

of retroactive relief. <u>See</u> <u>Pennhurst</u>, 465 U.S. at 105 ("we declined to extend the fiction of Young

to encompass retroactive relief, for to do so would effectively eliminate the constitutional

immunity of the States").

     Accordingly, the Eleventh Amendment bars Plaintiff's federal law claims against

Defendants Blumenthal and Kohler, insofar as Plaintiff seeks money damages or any other form

of retroactive relief.  Because this Court lacks subject matter jurisdiction over Plaintiff's federal

law claims for money damages against Defendants Blumenthal and Kohler, those claims are

dismissed.

     The Supreme Court has also noted, however, that "the Eleventh Amendment does not

erect a barrier against suits to impose 'individual and personal liability' on state officials under §

1983," nor "are state officers absolutely immune from personal liability under § 1983 solely by

virtue of the 'official' nature of their acts." <u>Hafer</u>, 502 U.S. at 30-31 (holding that "state

officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").  As

such, Plaintiff requests leave to amend his complaint to sue Defendants Blumenthal and Kohler

in their personal capacities. (Pl.'s Opp. Mot. Dismiss ¶ 2.)

     3.    <u>Federal Claims Against State Officials for Prospective Injunctive Relief</u>

13

In addition to his claims for money damages, Plaintiff asserts claims for prospective injunctive relief against Defendants Blumenthal and Kohler.  Plaintiff seeks reinstatement to his position or an equivalent position at Millstone, and asserts that these defendants "wrongfully acted to preclude the plaintiff's reinstatement to his employment at Millstone and they should be barred from doing so in the future." (Pl.'s Opp. Mot. Dismiss ¶ 2.)  Defendants Blumenthal and Kohler argue that they have no authority to provide the relief sought by Plaintiff. (Defs.' Mem. Supp. Mot. Dismiss 11.)

As noted above, the Supreme Court, in Ex parte Young, recognized an exception to Eleventh Amendment immunity in cases in which a state official is sued in his or her official capacity for prospective injunctive relief based on a federal constitutional violation. Quern, 440 U.S. at 337 (citing Ex parte Young, 209 U.S. 123).  Therefore, under this doctrine, federal courts may "enjoin state officials to conform future conduct to the requirements of federal law." Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002).  To determine whether Ex parte Young avoids an Eleventh Amendment bar to suit, the inquiry is a straightforward one: the court need only ask "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).  These elements are not in question here.

For the Ex parte Young exception to apply, however, a plaintiff seeking prospective injunctive relief must be seeking such relief from a state official who has a direct connection to, or responsibility for, the alleged illegal action:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act , or else it is making him a party as a

14

representative of the State, and thereby attempting to make the State a party.

Ex parte Young, 209 U.S. at 157; see also Yakama Indian Nation v. Locke, 176 F.3d 467, 469-70

(9th Cir. 1999).  So long as the state officer has "some connection with the enforcement of the

act" that is in continued violation of federal law, "it is not necessary that the officer's

enforcement duties be noted in the act." In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367,

372-373 (2d Cir. 2005); see also Prairie Band Potawatomi Nation v. Wagnon, 402 F.3d 1015,

1027 (10th Cir. 2005) (holding that state officials "are not required to have a 'special connection'

to the unconstitutional act or conduct;" they need only "have a particular duty to 'enforce' the

statute in question and a demonstrated willingness to exercise that duty").  Moreover, personal

action or involvement on the part of the named official is not required. Marshall v. Switzer, 900

F. Supp. 604, 615 (N.D.N.Y. 1995) (although the state official in question was not personally

involved in the alleged wrongful conduct, he was "the official responsible for the allegedly

wrongful denial of benefits," and therefore, the plaintiff's claims against that state official in his

official capacity for prospective injunctive relief were not barred) (citing Luckey v. Harris, 860

F.2d 1012, 1015-16 (11th Cir. 1988), cert. denied, 495 U.S. 957, 109 L. Ed. 2d 744, 110 S. Ct.

2562 (1990) ("Personal action is not a necessary condition of injunctive relief against state

officers in their official capacity")).  Failure to name the proper defendant is fatal to the claim.

Yakama Indian Nation, 176 F.3d at 469.

   In Yakama Indian Nation, the Yakama Indian Tribe sued the State of Washington and its

governor, claiming that the State's operation of a lottery on the tribe's reservation violated the

Indian Gaming Regulatory Act, and seeking monetary damages and injunctive relief against the

governor.  The Ninth Circuit found that all claims, including the claim for injunctive relief

against the governor, was barred by the Eleventh Amendment. <u>Yakama Indian Nation</u>, 176 F.3d at 470.  The court reasoned that "[t]he complaint contains no allegations that the governor is charged with operating the state lottery," and "[n]owhere in [the state] statutes is there any indication that the governor has the responsibility of operating the state lottery or determining where its tickets will be sold." <u>Id</u>. at 469-70.  As such, the court held that the governor "lacks the requisite connection to the activity sought to be enjoined," and therefore "share[s] the State's Eleventh Amendment immunity from unconsented suit in federal court." <u>Id</u>. at 470.

Defendants Blumenthal and Kohler argue that they, in their positions as Attorney General and Assistant Attorney General, have no authority to provide the relief requested.  They contend that "[n]o provision of the Connecticut General Statutes grants these defendants any authority to hire or fire NNECO employees or, specifically, to reinstate the plaintiff, and nothing in the Complaint alleges otherwise." (Defs.' Mem. Supp. Mot. Dismiss 12-13.)  Plaintiff, alternatively, claims that Defendants Blumenthal and Kohler's connection to the illegal action is established by the "secret litigation," i.e., <u>CL&P v. DPUC</u>, that "resulted in a secret termination of Plaintiff's rights without notice to him nor an opportunity to participate in the litigation." (Pl.'s Reply 4.) Plaintiff claims that it was only in this litigation that the DPUC, through Defendants Blumenthal and Kohler, agreed to vacate its prior order reinstating Plaintiff to his former or equivalent position at Millstone. (<u>Id</u>.)

The transcript of the October 9, 1997 oral argument in <u>CL&P v. DPUC</u>, however, raises serious questions about the viability of Plaintiff's claim.  Importantly, the transcript suggests no "secret" agreement, but only a clarification of the DPUC's position—i.e., that the amended Act did not require Plaintiff's reinstatement.  There is no evidence that the DPUC "agreed" to vacate

its prior order reinstating Plaintiff to his former or equivalent position in the <u>CL&P v. DPUC</u>

litigation.  First, the order initially issued by the DPUC expressly provided that the DPUC "will

stay implementation of the orders in this Decision, pending the outcome" of the <u>CL&P v. DPUC</u>

litigation. (DPUC Decision 7, Sept. 7, 1997, Ex. 4 to Defs.' Mot. Dismiss.)  The fact that the stay

was a condition of the initial order establishes that the DPUC's failure to immediately reinstate

Plaintiff to his position was not the result of any secret agreement made after the order was

issued.  Moreover, while <u>CL&P v. DPUC</u> was pending, the Whistleblower Act—pursuant to

which the initial order was issued—was amended, thus vitiating the DPUC's initial order.

<u>See</u> 1999 Conn. Pub. Acts No. 99-46, effective May 27, 1999.  On October 26, 1999, before

<u>CL&P v. DPUC</u> was resolved, the DPUC notified NNECO and Plaintiff, via letter, that it would

continue processing Plaintiff's complaint pursuant to Conn. Gen. Stat. § 16-8a, as amended by

Public Act No. 99-46.  It was not until November 22, 1999 that <u>CL&P v. DPUC</u> was settled,

however, at that point, the DPUC had re-opened Plaintiff's complaint and began a de novo

review of the complaint under the amended act and pursuant to the procedures that the

amendment established.  There is no evidence that the DPUC's final decision dismissing

Plaintiff's complaint, issued on May 2, 2001, was the product of a "secret agreement," or that

Defendants Blumenthal and/or Kohler had any connection to that decision.

     The Attorney General and Assistant Attorney General are not named in the

Whistleblower Act, Conn. Gen. Stat. § 16-8a, however, as attorneys for the State of Connecticut,

they represent the DPUC in all judicial and other legal proceedings.  Moreover, Conn. Gen. Stat.

§ 16-10 provides that "[t]he Superior Court, <u>on application of</u> the Department of Public Utility

Control or of <u>the Attorney General</u>, may enforce, by appropriate decree or process, any provision

17

of this chapter or any order of the department rendered in pursuance of any statutory provision."

Conn. Gen. Stat. § 16-10 (emphasis added). These factors, however, are not sufficient to

establish subject-matter jurisdiction over Defendants Blumenthal and Kohler. The Complaint

contains no allegation, and there is no indication in the Connecticut statutes, that Defendants

Blumenthal and Kohler have the authority to provide the relief requested—namely, to reinstate

Plaintiff to his former or equivalent position with NNECO. Because these defendants "lack[] the

requisite connection to the activity sought to be enjoined," they "share the State's Eleventh

Amendment immunity from unconsented suit in federal court." Yakama Indian Nation, 176 F.3d

at 470. As such, the federal law claims against Defendants Blumenthal and Kohler for

prospective injunctive relief are dismissed for lack of subject matter jurisdiction.

4.      Plaintiff's Requests for Leave to Amend Complaint

As noted above, Plaintiff includes in his Opposition brief a request for leave to amend his

complaint to assert claims against individual members of the DPUC and Attorney General

Richard Blumenthal and Assistant Attorney General Mark Kohler in their individual capacities.

(See Pl.'s Opp. Mot. Dismiss ¶¶ 1, 2.) Defendants object to this request on the ground that any

such amendment would be futile. Specifically, they argue that such an amendment would do

nothing to cure the fact that Plaintiff has failed to state a claim upon which relief can be granted

and would be barred by the same jurisdictional bars that apply to the present Complaint. (Defs.'

Reply 9.)

When a plaintiff moves to amend a complaint, leave to file an amended complaint "shall

be freely given when justice so requires." Fed. R. Civ. P. 15(a). The district court has discretion

as to whether leave to amend should be granted, Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct.

227, 9 L. Ed. 2d 222 (1962), however, "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing spirit of the Federal Rules." United States v. Continental Illinois Nat'l Bank & Trust, 889 F.2d 1248, 1254 (2d Cir. 1989) (citing Fed. R. Civ P. 1, which states that the rules are to be construed "to secure the just, speedy, and inexpensive determination of every action.").

Leave should be "freely given" in the absence of a stated or apparent reason to the contrary, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182. A denial of leave to amend on the ground that the proposed amendment would be futile is permissible only "where there is no possible merit to the claims." National Union Fire Ins. Co. v. Gordon, Nos. 87 Civ. 7695 (LLS), 87 Civ. 7696 (LLS), 89 Civ. 3235 (LLS), 1991 U.S. Dist. LEXIS 309, at *16, 1991 WL 4753 (S.D.N.Y. Jan. 11, 1991) (citing Slavin v. Benson, 493 F. Supp. 32, 33 (S.D.N.Y. 1980)); accord Glassman v. Computer Vision, 90 F.3d 617, 622 (1st Cir. 1996); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

To the extent that Plaintiff seeks to sue individual members of the DPUC in their official capacity for money damages, leave to amend is denied. As discussed above, a "suit against a state official in his or her official capacity is . . . no different from a suit against the State itself," and therefore is barred by the Eleventh Amendment. Will, 491 U.S. at 71. Moreover, to the extent that Plaintiff seeks to sue Defendants Blumenthal and Kohler in their individual capacities for injunctive relief, leave to amend is denied. Claims against a state officer for prospective relief must be asserted only against the officer in his or her official capacity. Poe v. Massey, 3 F.

19

Supp. 2d 176, 178 (D. Conn. 1998) (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14, 87 L.

Ed. 2d 114, 105 S. Ct. 3099 (1985); Hill v. Shelander, 924 F.2d 1370, 1374 (7th Cir. 1991)).

    Finally, to the extent that Plaintiff seeks to sue individual members of the DPUC and

Defendants Blumenthal and Kohler in their individual capacities for money damages, leave to

amend is also denied on the ground that such an amendment would be futile.  Any claims for

money damages against the officials in their individual capacities would be barred by qualified

immunity if Plaintiff is unable to show that (1) the officials' conduct violated a constitutional

right and (2) the constitutional right alleged to have been violated was clearly established at the

time, such that it would be clear to a reasonable official that his or her conduct was unlawful in

the situation he or she confronted. Saucier v. Katz, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L.

Ed. 2d 272 (2001).  Plaintiff has not shown that any constitutional right was violated.  Any right

that Plaintiff may have to his former job is subject to his former employer's right to be heard, and

is, at best, a conditional constitutional right.  Plaintiff was accorded due process, such that the

DPUC adjudicated his claim after he was afforded an opportunity to be heard.  Plaintiff has also

not shown that any right of his was violated in the CL&P v. DPUC litigation.  To the extent that

Plaintiff wanted to protect any constitutional rights, he could have sought to intervene in that

litigation, however, he failed to do so.  Because any claims against the officials in their individual

capacities would be barred by the doctrine of qualified immunity, there is no possible merit to

Plaintiff's claims.  Accordingly, leave to amend is denied on the ground that the proposed

amendment would be futile.

    **B.    Whether Plaintiff's State Law Claims against the State Defendants for
        Money Damages are Barred by Sovereign Immunity**

The Connecticut Supreme Court has long recognized that the common law doctrine of sovereign immunity bars suit against the State except where the State, by appropriate legislation, consents to be sued. Canning v. Lensink, 221 Conn. 346, 349, 603 A.2d 1155 (1992) (recognizing the common-law principle that "the state cannot be sued without its consent"); Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977); State v. Kilburn, 81 Conn. 9, 11, 69 A. 1028 (1908). This broad immunity applies not only to suits against the State, but also to suits against state officers in their official capacities. Canning, 221 Conn. at 349 ("Because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.").

The Connecticut Supreme Court has recognized an exception to sovereign immunity in actions for injunctive or declaratory relief in which the officer is alleged to have acted in excess of statutory authority or pursuant to an unconstitutional statute, however, "[t]his exception does not apply . . . to claims against the state for monetary damages." Miller v. Egan, 265 Conn. 301, 314-15, 828 A.2d 549 (2003) (citations omitted). With respect to claims against state officials for monetary damages, "[w]hen sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim." Krozser v. New Haven, 212 Conn. 415, 421, 562 A.2d 1080 (1989) (citing Conn. Gen. Stat. §§ 4-141 through 4-165b), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990); see also Miller, 265 Conn. at 317. Pursuant to Conn. Gen. Stat. § 4-148(b), sovereign immunity bars any claims against the state for monetary damages except those sanctioned or authorized by the claims commissioner. Krozser, 212 Conn. at 421; Miller, 265 Conn. at 317-18. Plaintiff does not claim to have obtained authorization of

21

the Claims Commissioner, and accordingly, all of his state law claims seeking money damages from the State Defendants are barred by sovereign immunity.

The only other remaining claim is a claim against Defendants Blumenthal and Kohler for prospective injunctive relief pursuant to the Nuclear Whistleblower Statute, Conn. Gen. Stat. § 16-8a.  The exception to sovereign immunity for claims against state officials for injunctive or declaratory relief only applies when the officer in question is alleged to have acted in excess of statutory authority or pursuant to an unconstitutional statute. Miller, 265 Conn. at 314 (citing, among others, Horton v. Meskill, 172 Conn. 615, 624, 376 A.2d 359 (1977); Pamela B. v. Ment, 244 Conn. 296, 328, 709 A.2d 1089 (1998); Doe v. Heintz, 204 Conn. 17, 32, 526 A.2d 1318 (1987)).  Plaintiff does not allege here that either defendant acted in excess of his statutory authority or pursuant to an unconstitutional statute.  As discussed in section III.A.3, supra, Defendants Blumenthal and Kohler have no authority to provide the relief requested—i.e., to reinstate Plaintiff to his former or equivalent position.  They are not responsible for the DPUC's decision to dismiss Plaintiff's complaint and do not have the power or authority to alter that result.  As such, all of Plaintiff's state law claims against the State Defendants are barred by sovereign immunity.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 11] is **granted**. Moreover, Plaintiff's Motion for Leave to Amend the Complaint is denied on the ground that the proposed amendment would be futile.  Because all claims against the State Defendants are dismissed on the grounds that they are barred by the Eleventh Amendment and the doctrine of Sovereign Immunity, the Court need not address the State Defendants' other, alternative

arguments for dismissal.  All claims against Defendants Blumenthal, Kohler, and the DPUC are hereby dismissed.

      SO ORDERED.

          Dated at New Haven, Connecticut, September _26_, 2006.

                          /s/

                    Peter C. Dorsey, U.S. District Judge
                    United States District Court